SPENCE v. WHITTAKER.

Opinion delivered October 15, 1928.

52

*Block & Kirsch* and *Dudley & Dudley*, for appellant.

*Ward & Ward* and *Cooley, Adams & Fuhr*, for appellee.

MEHAFFY, J. The appellant and appellee were opposing candidates for the Democratic nomination for State Senator in the First Senatorial District, composed of Clay, Greene and Craighead Counties, at the primary election on August 14, 1928. There were no other candidates for the nomination. The appellant received a majority of the votes cast, and was declared to be and duly certified as the nominee for senator from said district.

After the primary election the appellee filed suit, alleging that appellant had failed to file the pledge required by § 4 of act 308, Acts of 1913 (C. & M. Digest, § 3898), requiring that candidates for State or district offices shall file with the Secretary of State, 30 days before said primary election, a pledge in writing, stating that he is familiar with the requirements of the act, and will in good faith comply with its terms.

Appellant filed answer and demurrer. A special term of circuit court was called for October 1, 1928, and the finding and judgment of the court was that appellant, having failed to file the pledge, was deprived of the nomination or the right to have his name on the ballot for the general election, and that there was no nominee for the party for State Senator, but that a vacancy existed.

Appellant filed his motion for a new trial, which was overruled, exceptions saved, and the case is here on appeal.

There were two suits brought; one filed on August 25, and thereafter, on September 12, a protest was filed before the Democratic State Central Committee, which was heard by the committee, and dismissed without prejudice; and the last suit was filed on September 19. The suits were consolidated, and were both prosecuted for the same purpose.

The case was tried upon a stipulation which recited "that the pledge required of candidates for this and other offices, under the provisions of § 3898 of the Digest, was at no time filed by the appellant in the office of the Secretary of State." That, as a matter of fact, appellant did, under date of June 7, 1928, mail to H. L. Lambert, then secretary of the Democratic State Central Committee, the pledge required to be filed by candidates in primary elections; that in the same letter to H. L. Lambert appellant did inclose the pledge executed and required under the provisions of § 3898 of the Digest; that H. L. Lambert did testify as follows with reference to the receipt of the letter and these pledges:

"I have looked up the correspondence between Hon. W. E. Spence, of Piggott, and myself regarding pledges. I find that a corrupt practice pledge was filed with me by Mr. Spence, and under date of June 7 he wrote me the following letter:

" 'Mr. H. L. Lambert, Secretary,
State Central Committee,
Little Rock, Ark.

" 'Dear sir: I am inclosing you herewith two pledges which I am filing with you as a candidate for State Senator from the First Senatorial District, and which I presume are to be filed with you. I do not know whether a fee is to be paid to your committee or to the county committee. Whichever it is, kindly let me know.

" 'Yours very truly, W. E. Spence.'

"In the rush of things just before the ticket closed, or possibly due to absence from the office, this did not come to my attention. My secretary filed the pledge

which is required under the rules of the Democratic Party to support the nominees, and the pledge under the Corrupt Practice Act, which should have been filed with the Secretary of State, was left attached to the letter. I did not know that this pledge had reached our office or I would have returned it to Mr. Spence and have requested him to file it with the Secretary of State. I regret very much that this did not come to my attention, since it is clear to me that Mr. Spence signed this pledge and filed it where he thought it should be filed."

It is further stipulated that, after the expiration of the time in which the pledge in question could be filed with the Secretary of State, appellee filed a protest with the Clay County Central Committee, at a meeting prior to said primary election, protesting and objecting to the placing of the name of appellant on the ticket for the primary election, because of appellant's failure to file the required pledge with the Secretary of State. That the minutes of the meeting of the Clay County Central Committee relating to the disposition of the protest filed by appellee is as follows:

"Mr. R. Whittaker, candidate for State Senator, filed a protest with the committee, seeking to prevent the name of W. E. Spence, also a candidate for State Senator for the First Senatorial District of Arkansas, being placed on the official ballot as a candidate for State Senator, alleging that he had failed to comply with § 3898 of Crawford & Moses' Digest, which requires any candidate for State or district offices to file with the Secretary of State a pledge in writing at least thirty days before the primary election. In answer to the protest, W. E. Spence stated that he had filed his pledge, as required by the primary law, with the Secretary of the State Democratic Central Committee, Mr. H. L. Lambert, and that he had a letter from Mr. Lambert stating that he had received the pledge, but that the letter did not state the disposition of same.

"Due to the fact that the chairman and secretary of the Democratic Central Committee have certified that

W. E. Spence, R. Whittaker and Carl L. Hunter have complied with the rules of the Democratic Party, we recommend that their names be placed on the ticket as candidates for State Senator.

"D. R. Stanley,

"W. S. Todd,

"E. R. Winton, Committee."

It is further stipulated that the name of W. E. Spence was placed on the ticket of Clay County as a candidate for State Senator, and that said central committee thereafter certified that at such primary election appellant received 1,430 votes and appellee received 1,136 votes; that the names of the candidates for office of State Senator appeared only on the ticket in Clay County, under a system of rotation between the three counties composing the district, whereby said counties rotated in regular order in furnishing the candidate for said office, and by which he appeared upon the ticket at the primary election only in the county from which he came in the regular order of rotation.

That a formal protest was filed by appellee with the State Central Committee, prior to its meeting on September 12, 1928, but after the filing of appellee's complaint in case No. 2050, on August 25, 1928; that in said protest appellee objected to the certification by the State Central Committee of appellant as the nominee for State Senator; that at said meeting of the State Central Committee appellant and appellee were each represented by counsel, and, upon a hearing, a motion was made by a member of said committee that the matter be dismissed by the State Central Committee without prejudice to either side, which motion was duly carried.

It was further stipulated that appellant did file the required pledge with the county clerk of Clay County; that H. L. Lambert, the secretary of the State Central Committee, would testify, if present, that at the hearing before the State Central Committee on September 12, 1928, he (Lambert) reviewed the correspondence between himself and appellant and between himself and appellee,

and made a statement to the State Committee, then in session, that, had his secretary, or assistant in office, called his attention to the fact the appellant had filed a corrupt practice pledge with him, he would have sent or taken it to the Secretary of State, or returned it to appellant; and that Mr. Lambert had in his hands, along with the other correspondence, at the hearing on the 12th day of September, 1928, the corrupt practice pledge made out by Mr. Spence, intended for the Secretary of State, but that it was not in fact filed with him.

As an exhibit to the stipulation of facts appears the following certificate:

"This is to certify that W. E. Spence has filed the pledge required under the rules of the Democratic Party as a candidate for State Senator from the First District of Arkansas, in the Democratic primary to be held August 14, 1928, and has paid NO dollars, the fee required of a candidate for said office.

"H. L. Lambert (in ink, signed)

"H. L. Lambert, Secretary

"Democratic State Central Committee."

The stipulation upon which the cause was heard was filed with the clerk at the hearing, and constituted all of the evidence offered by either of the parties.

The appellant discusses a number of questions in his brief, but we have concluded that it is unnecessary to pass upon any of the issues in the case except the construction of the statute with reference to the Corrupt Practice Act. The section of the law involved reads as follows:

"Candidates for State or district offices shall file with the Secretary of State, and candidates for county or township offices shall file with the county clerk of the county, and candidates for city or town offices shall file with the city clerk or town recorder, thirty days before said primary election, a pledge in writing, stating that he is familiar with the requirements of the act of April 2, 1913, and will in good faith comply with its terms" (§ 3898, C. & M. Digest).

The above section is a part of what is known as the Corrupt Practice Act. It was evidently the purpose of the Legislature, in passing this act, to prevent all kinds of corrupt practices in the election and to secure to the people honest and fair elections. It was its intention to protect the voters in the primary elections against fraud and corruption and wrongful conduct, and to insure the voter that his wishes expressed through his ballot should be given effect.

Statutes in some States require certain things to be done by the candidate, and provide that he shall be ineligible or that his name shall not be placed on the ticket unless he complies with the requirements. There is no such provision in our statute. The sections of the Corrupt Practice Act intended to prevent fraud and corruption and wrongful conduct in the election all begin with the statement "that it shall be unlawful." There is no such statement with reference to the duties prescribed in § 3898. That section simply provides that, 30 days before the primary election, the candidate shall file his pledge in writing with the Secretary of State, showing that he is familiar with the requirements of the act and will in good faith comply with its terms.

There is no charge against appellant in this case of any corrupt practice or any wrongful conduct in any way. It is simply contended that, because he failed to file the pledge with the Secretary of State in 30 days, his name should not go on the ticket. The central committee would have had the right to refuse to put his name on the ticket because of his failure to comply with this statute, but he explained to the committee the circumstances, and the committee put his name on the ticket to be voted for at the primary election. There is no dispute about the fact that he received a majority of the votes, but it is contended that he is not the legal nominee of the party and not entitled to have his name appear on the ballot at the election because he failed to file the pledge required.

The evidence shows that on June 7, more than 30 days before the primary, the appellant mailed to H. L. Lambert, secretary of the Democratic State Central Committee, the pledge to be filed by candidates in primary elections, and that in the same letter he inclosed the pledge to be filed with the secretary. He also inclosed the pledge executed and required under the provision of § 3898 of Crawford & Moses' Digest, when he should have sent this pledge to the Secretary of State. But in his letter inclosing the pledge he stated that he was inclosing two pledges which he was filing with the secretary of the committee as a candidate for State Senator, and stated that he presumed they were to be filed with the secretary of the central committee.

We think that this clearly shows that it was the intention of appellant to comply with the law. He thought he had complied with it, and, as testified to by the secretary of the central committee, it would probably have been filed by him, but in the rush of things just before the ticket closed, or due to the absence from the office of the secretary, the matter did not come to his attention.

If one should deliberately fail or refuse to file the pledge required by the law, it would be the duty of the committee to refuse to put his name on the ticket. But where, as in this case, the evidence shows that the candidate was guilty of no violation of the Corrupt Practice Act, that he intended in good faith to comply with the provisions of the law, and that no harm resulted, and he received a majority of the votes cast in the primary election, to hold that failure to file the pledge with the Secretary of State, under the circumstances, disentitled him to have his name on the ticket, would be, in effect, to disfranchise a majority of the voters in the district.

It was certainly not the intention of the Legislature to permit a majority of the voters to be disfranchised because some candidate, acting in perfect good faith, made a mistake, and filed his pledge in the wrong place.

And, whether the statute is directory or mandatory, in this case a very much greater wrong would be done to prevent appellant's name from going on the ticket than to permit it to go on. In other words, no harm can be done by putting his name on the ticket as the nominee when all the facts in the case show that he acted in good faith and violated no provision of the Corrupt Practice Act, and the majority of the electors voted for him as the nominee.

Appellant contends that the trial court was correct, and bases his contention on §§ 3775 and 3776 of Crawford & Moses' Digest. Section 3775 reads as follows:

"Should it be proved to the satisfaction of the trial judge, in a case instituted under §§ 3772, 3773, or a prosecution as contemplated by § 3774, that a successful candidate has been guilty of violating any provision of the Corrupt Practice Act, or any other violation of the laws regulating primary elections, the circuit court shall enter such finding as a part of the judgment, irrespective of the determination of the issues in the suit instituted under §§ 3772, 3773, or the verdict of the jury in a criminal prosecution; and the judgment to that effect shall operate to deprive the candidate of the nomination and right to have his name on the ballot, and the vacancy shall be filled by a special primary or otherwise, as may be determined by the party organization."

Section 3776 reads as follows:

"Should a proceeding under §§ 3767-3771, or a criminal prosecution under § 3774, be not determined finally until after the election, and the defendant in such proceeding is elected to the office as the nominee of the party, and it is determined that he was not entitled to the nomination, or the judgment contains a finding that he violated the laws, as provided in § 3774, then such judgment shall operate as an ouster from office, and the vacancy in it shall be filled as provided by law for filling vacancies in such office in case of death or resignation."

If § 3898 contained a provision to the effect that a failure to file the pledge would deprive the candidate of the right to become the nominee of the party or of the right for his name to go on the ticket, then there could be no dispute about it. But it does not so provide, and we think that the failure of the Legislature to provide that such failure would operate to deprive the candidate of the right to have his name on the ticket shows that it was not the intention of the Legislature that a person who acted in good faith and had violated no provisions of the Corrupt Practice Act, should be deprived of the nomination through a mistake such as has been made in this case.

"Until a comparatively recent date there was little, if any, legislative regulation of the methods by which political parties nominated their candidates for office; the candidates were named by caucuses, conventions, or unofficial primary elections, as the several parties determined. However, the right of political parties to make nominations is not absolute; it may be abolished or circumscribed, or its exercise regulated, by the Legislature. This right of regulation is of course subject to constitutional limitations; and accordingly, if the Legislature grants to any convention, committee, or other body the right to make nominations, it cannot limit the right of such body to nominate as its candidate any person who is qualified for the office. And the fact that statutory regulations were not complied with in the nomination of a candidate does not invalidate his election." 20 C. J. 104.

"The general tendency of these statutes is to put the rights of voters in party or primary elections under the protection of the law in the same manner that the rights of voters in elections of officers have been under its protection." 20 C. J. 112.

"The dominant idea pervading these statutes is the absolute assurance to the citizen that his wish as to the conduct of the affairs of his party may be expressed through his ballot and thus given effect,

whether it be in accord with the wishes of the leaders of his party or not; and that thus shall be put in effective operation in the primaries that fundamental principle of democracy which makes the will of an unfettered majority controlling. In other words, the scheme is to permit the voters to construct the organization from the bottom upward instead of permitting the leaders to construct it from the top downward." *People* v. *Kings County Democratic Gen. Committee,* 164 N. Y. 335, 58 N. E. 124, 51 L. R. A. 674.

When we hold in mind the purpose of the statute, that it was enacted to secure honesty and fairness in elections and to give effect to the wishes of the majority of the voters, it seems to us that any other construction of this statute, that is, to hold that, under the circumstances and facts in this case, the appellant would not be entitled to have his name go on the ticket, would defeat the very purpose of the act. It would deprive the candidate who received a majority of the votes of having his name on the ticket, when all the facts show that the election was fair and honest, free from fraud and corruption, and that the candidate himself acted in good faith.

The intention of the law is to assure fairness and honesty and the nomination of the man favored by a majority of the voters. If the Legislature had intended that a failure to file this pledge should deprive one of the right to have his name on the ticket when there was no question of any wrongful conduct or any attempt to violate or evade the law, it would have provided in plain language that this should operate as a disqualification. Since in the other sections of the statute the Legislature used the words "it shall be unlawful" and did not use those words or any similar words in this section or with reference to this section, we think it plain that they did not intend that the will of a majority should be defeated simply by the candidate making a mistake as to where his pledge should be filed.

The judgment of the circuit court is therefore reversed, and the cause dismissed.

HART, C. J., (dissenting opinion). Section 3898 of Crawford & Moses' Digest provides in effect that candidates for State or district offices shall file with the Secretary of State, thirty days before said primary election, a pledge in writing stating that he is familiar with the requirements of the act and will in good faith comply with its terms. This is § 4 of our Uniform Primary Act which was passed by the Legislature of 1913. The act contains fourteen sections, and all its provisions are in form mandatory. It is apparent from the subject-matter of the act and the purposes sought to be accomplished by the framers thereof that it was intended that all officers intrusted with its enforcement should be held strictly to the provisions of the act. Nothing was left to the good intentions of the candidate or of the officers intrusted with the enforcement of the act. In the very nature of things any construction which tends towards confusion or uncertainty in the provisions of the act is likely to be hurtful in its effect. Public inconvenience, confusion to the electors and political parties and great injustice to candidates may all result from any other view than a mandatory interpretation of the act in accordance with its express terms. Where the language of an act is clear and unequivocal, there is no room for interpretation, and its provisions should be enforced. Any other course would tend to defeat its purpose and might lead to fraud and injustice in many instances. It is no answer to say that the candidates affected in this case were both men above reproach, and that no injustice had resulted. The provisions of an act must be tested by the object and purposes of its enactment and what evils might result from an enforcement of its provisions contrary to the intention of the framers of the act.

I am authorized to state that Justices SMITH and HUMPHREYS concur in the view herein expressed.