ROBINSON *v.* HOLMAN.

Opinion delivered March 24, 1930.

*Jno. A. Hibbler, Booker & Booker,* and *Scipio A. Jones,* for appellant.

*June P. Wooten* and *D. K. Hawthorne,* for appellee.

McHANEY, J. Appellants brought this action to establish their right as negroes and Democrats to vote in Democratic primary elections in this State. The appellees are members of the Democratic City Central Committee of Little Rock, Democratic Primary election officials of said city in a primary election held November 26, 1928, for the purpose of selecting nominees of the Democratic Party for city officials, and the chairman and secretary of the Democratic State Central Committee. The case was submitted to the chancery court on an agreed statement of facts substantially stated as follows: That appellants are citizens, residents and taxpayers of the city of Little Rock, Arkansas, are qualified electors, and supported the Democratic nominees in the

general elections in 1926 and 1928; that they voted in the Democratic city primary held in Little Rock on November 26, 1928, by reason of a temporary restraining order issued by the chancery court, enjoining the primary officials from excluding them, without the consent or approval of the officials of the Democratic State Central Committee; that they have expressed and declared themselves in sympathy with the success of the Democratic Party, and are believers in its principles; that the following is one of the "Rules of the Democratic Party in Arkansas, adopted October 16, 1926, under the authority of the Democratic State Central Committee of Arkansas" which said rule is now in force, to-wit: "Whom to consist of § 2. The Democratic Party of Arkansas shall consist of all eligible and legally qualified white electors, both male and female, who have orally declared their allegiance to the principles and policies of the Democratic Party, as set forth in the platform of the last preceding Democratic National and State Convention, who have supported the Democratic nominees at the last preceding elections and who are in sympathy with the success of the Democratic party in the next succeeding election."

It was further agreed that, for the last 25 years in the State of Arkansas, all Democratic nominees had been elected at the succeeding elections for State officials, except members of the Legislature, and a few district officials.

The court dismissed the complaint for want of equity, and dissolved the temporary injunction theretofore issued. The case is here on appeal.

Appellants contend that a Democratic primary election is a public election under the Constitution and the laws of Arkansas, and that the above party rule deprives them of their right to vote solely because of color in violation of the Fifteenth Amendment of the Constitution of the United States. They further claim that they are being denied their rights as citizens of the United

States in violation of the equal protection clause of the Fourteenth Amendment of the Constitution of the United States. Section 1 of the Fourteenth Amendment reads as follows: "All persons born or naturalized in the United States and subject to the jurisdiction thereof are citizens of the United States, and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States, nor shall any State deprive any person of life, liberty or property without due process of law; nor deny to any person within its jurisdiction the equal protection of the law."

Section 1 of the Fifteenth Amendment reads as follows: "The rights of citizens of the United States to vote shall not be denied or abridged by the United States, or any State, on account of race, color or previous condition of servitude."

By the act of April 23, 1909, p. 505, now § 3754, C. & M. Digest, primary elections in this State were made legal elections in the following language: "Whenever any political party in this State shall, by primary election, nominate any person to become a candidate at any general election, regular or special, or for U. S. Senator, or for Congress, or any legislative, judicial, State, district, county, township or municipal office, the said primary election shall be, and is hereby made, a legal election." In 1917, the people of the State initiated and adopted what is commonly referred to as the Brundidge Primary Election Law, the objects and purposes of which were to safeguard the rights of candidates, to prevent fraud in primary elections, and to confer jurisdiction on the circuit courts in the matter of contests arising at the primary elections. This act fixed a definite time for holding elections, provided for printing of ballots, selection of judges and clerks, their duties and many other provisions and regulations set out in §§ 3757 to 3782, both inclusive, C. & M. Digest.

Nowhere is there to be found any provision in the statutes of Arkansas requiring any political party to hold

primary elections. The acts above mentioned are applicable only in the event the political party does hold a primary election.

It will be noticed that the prohibition in the Fourteenth Amendment is directed against the action of the State, ''Nor shall any State * * * deny to any person within its jurisdiction the equal protection of the law.'' Likewise the prohibition in the Fifteenth Amendment is directed against the action of the United States or of any State, ''The rights of citizens of the United States to vote shall not be denied or abridged by the United States or any State on account of race, color,'' etc.

The State of Arkansas has passed no law, depriving appellants or any other qualified electors, on account of color or for any other reason, of the right to vote. The party rule above quoted is merely a rule of the Democratic Party in Arkansas with which the State had nothing to do. A political party such as the Democratic Party in Arkansas is an unincorporated, voluntary association of persons sponsoring certain ideas of government or maintaining ''certain political principles or beliefs in the public policies of the government.'' *Walls* v. *Brundidge*, 109 Ark. 250, 160 S. W. 230, Ann. Cas. 1915C, 980; *Grigsby* v. *Harris*, 27 Fed. (2d) 942. As said by U. S. District Judge Hutcheson in *Grigsby* v. *Harris, supra*, (Texas): ''But the fact remains that the objects of political organizations are intimate to those who compose them. They do not concern the general public. They directly interest, both in their conduct and in their success, only so much of the public as are comprised in their membership, and then only as members of the particular organization. They constitute no governmental agency. To provide nominees of political parties for the people to vote upon in the general elections is not the business of the State. It is not the business of the State, because in the conduct of the government the State knows no parties and can know none. Political parties are political instrumentalities. They are in no sense governmental instrumentalities.''

The State has nothing to do with the holding of primary elections. The statute fixes the date for holding primary elections, but the State appoints no officers to hold a Democratic primary. It does not pay the cost thereof. The machinery for holding a Democratic primary election in Arkansas is entirely an instrumentality created by the party with which the State, as a State, has nothing to do. Whereas in a general election the entire machinery for holding such election is the creature of the State.

Appellants have cited no case that sustains their contentions. The cases cited and relied upon grow out of discriminations complained of in general elections with the exception of *Nixon* v. *Herndon,* 273 U. S. 536, 47 S. Ct. 446. That case was a suit for damages against the judges of elections for refusing to permit the appellants to vote in a primary election in Texas. The right to vote was denied them by reason of a statute of that State which provided that ''in no event shall a negro be eligible to participate in a Democratic Party primary election held in the State of Texas.'' The Supreme Court of the United States undoubtedly was correct in holding the act unconstitutional as being in violation of the Fourteenth Amendment, and found it unnecessary to consider the matter under the Fifteenth Amendment. After the decision in this case, the offending statute was repealed, and the Democratic Party in Texas adopted a rule similar to the rule of the Democratic Party in Arkansas, above quoted, and the same Nixon, having been deprived of the privilege of voting in the Democratic primary in Texas, brought another action for damages against the election judges at a Democratic primary in Texas refusing him the privilege of voting therein. The case was tried before District Judge Boynton of the Western District of Texas, El Paso Division, on July 31, 1929. The style of the case is *Nixon* v. *Condon,* 34 Fed. (2d) 464. It is there held that the action could not be maintained for the reason that the members of the Democratic

executive committee or the judges at the election in question were not officers of the State of Texas, nor were they officials or agents of the State of Texas. It was further said: "The court also holds that the members of a voluntary association, such as a political organization, members of the Democratic Party in Texas, possessed inherent power to prescribe qualifications regulating membership of such organization, or political party." See also *United States* v. *Gradwell*, 243 U. S. 476, 37 S. Ct. 407; *Karem* v. *U. S.*, 121 Fed. 250; R. C. L., p. 1075; *Newberry* v. *U. S.*, 256 U. S. 232, 41 S. Ct. 469.

Being a voluntary political organization and not an agency of the State, the Democratic Party had the right to prescribe the rules and regulations defining the qualifications of membership, and to provide that only white people could become members, without coming within the prohibition of either the Fourteenth or Fifteenth Amendment. The fact that nominees of the Democratic Party in Arkansas are always elected at the general election does not alter the situation. Neither does the fact that appellants are Democrats, that they believe in the principles of the Democratic party, and that they supported the nominees in previous general elections. There is no more reason to say that the Democratic party in Arkansas cannot make the rule in question, than there is to say that the Masonic bodies in Arkansas may not exclude them on account of color.

It necessarily follows that the chancery court correctly dismissed the complaint for want of equity. Decree affirmed.