FISHER *v.* TAYLOR.

4-8009                                    196 S. W. 2d 217

Opinion delivered July 8, 1946.

Rehearing denied September 30, 1946.

*Claude F. Cooper* and *T. J. Crowder,* for appellant.

*W. Leon Smith,* for appellee.

Robins, J. Appellant is a citizen of Mississippi county, Arkansas, and for more than two years before the beginning of the suit below has been serving in the United States Navy. Desiring to become a candidate for the office of representative in the General Assembly from his county he instructed his mother to take the necessary steps to have his name placed on the ballot in the 1946 Democratic primary election. His mother, on May 1, 1946 (the last day on which candidates could qualify), went to the secretary of the Democratic Central Committee of Mississippi county and procured from him the blank party loyalty pledge, signed appellant's

name thereto, left the pledge with the secretary and paid the required fee of $50, for which the secretary issued to her proper receipt. The chairman of the County Central Committee, on May 3, 1946, wrote appellant's mother a letter enclosing a check for $50 and advising her that the party loyalty pledge, not having been personally signed by her son, did not comply with the party rules and could not be accepted.

Thereafter appellant instituted in the lower court this suit praying for writ of mandamus against the chairman and secretary of the committee to compel the printing of appellant's name on the official ballot as a candidate for representative. To reverse judgment of the lower court denying the writ this appeal is prosecuted.

Only two witnesses testified in the trial below—the mother of appellant, who testified in his behalf, and the chairman of the County Central Committee, who appeared as a witness for appellees.

The substance of the testimony of appellant's mother was that her son, having previously expressed a desire to run for office, sent her a letter, written on board ship in New York harbor, enclosing a power of attorney and directing her to file his pledge, pay his fee and otherwise qualify him as a candidate for representative. This letter and power of attorney were both dated April 27, 1946, and the power of attorney was acknowledged before a commissioner of deeds of New York, whose official certificate, dated April 27, 1946, was attached thereto. Appellant's mother further testified that in compliance with her son's directions she went to the secretary of the County Central Committee, obtained from him the blank loyalty pledge, signed her son's name thereto, left the pledge with the secretary, paid him the required fee, and then, on advice of the secretary, went to the office of the County Clerk where, on behalf of her son, she executed and filed the "corrupt practice" pledge required by § 4893, Pope's Digest.

The chairman of the County Central Committee testified that under his interpretation of the party rule the loyalty pledge must be signed personally by the candidate and that for this reason he returned the fee which had been paid to the secretary and advised appellant's mother that appellant's name could not be placed on the ticket.

The pertinent rules of the Democratic party of Arkansas are as follows:

"Section 54. Candidates—Eligibility.—Any eligible Democrat, as defined by these rules, who shall pay all assessments and the fees levied against him by the proper committee, or committees, as a candidate or office holder, and who files the pledge required hereinafter, will be entitled to enter the race for any office or for delegate or committeeman, and to have his name printed on the ballots.

. . . . . .

"Section 57. Candidates—Pledge of Loyalty.— Each candidate shall file a written pledge to abide by the result of the primaries to support the nominees of the party. The pledge shall be as follows:

## "FORM OF PLEDGE

"As a candidate for the Democratic nomination for the office of_____held in the Democratic Primary Elections to be on_____, 194_____, and on the_____day of_____, 194_____, I hereby pledge myself to abide by the results of said primary election and to support all the nominees thereof. I declare that I am not now and will not become the candidate of any faction, independent or otherwise, either privately or publicly suggested in opposition to a regular Democratic nominee.

"This_____day of_____, 194_____.

"(Signed)_____

"Section 68. All candidates for United States Senators, Representatives, in Congress and all state and district offices shall file the prescribed pledge with the secretary of the State Committee and all candidates for county and township offices shall file the prescribed pledge with the secretary of the County Committee, not later than 12 o'clock noon on the 90th day before the preferential primary election, and all candidates for municipal offices (including candidates for County and City Committeeman) shall file their pledges with the secretary of the County Committee and the City Committee not later than 12 o'clock noon on the 30th day before the preferential primary election.

"The name of any candidate, who shall fail to sign and file said pledge within the time fixed shall not appear on the official ballot in said primary election."

It will be noted that the candidate is not required to swear to the loyalty pledge—only his signature thereto is required.

It is argued by appellees that the interpretation of the party rules is a duty solely to be performed by the officials of the party and that appellant had no redress in court for a mistaken interpretation of the rules by the representatives of the party.

In the case of *Williamson* v. *Montgomery*, 185 Ark. 1129, 51 S. W. 2d 987, which was a suit to compel acceptance of a loyalty pledge from a candidate allegedly not filed by the required date, we said: "We have already said that, if there was any charge of fraud or arbitrary action, the court would have jurisdiction, and mandamus would lie to compel a compliance with the rules of the party."

There is nothing in the record to indicate, and it is not urged, that there was any fraudulent conduct about the refusal to place appellant's name on the ballot or that the chairman of the committee was actuated by any improper motive in adopting the attitude which he took in the controversy; but it is insisted by appellant that

his action, under the circumstances, was arbitrary. Therefore the lower court properly refused to hold that it had no jurisdiction of appellant's petition.

While earlier decisions of this court have tended to establish the rule that a primary election is peculiarly a party affair, in which the courts should be reluctant to interfere, the effect of recent decisions of the United States Supreme Court is to hold that .party primaries are an integral part of the election machinery—as much so as the general elections. We recognized this "new order of things" in our recent decision in the case of *Adams* v. *Whittaker, ante,* p. 298, 195 S. W. 2d 634, in which we held that, since the legalized primary election had been declared by our nation's highest court to be a part of the regular electoral system of a state, the legislature might properly require the expense of such primary election to be paid with county funds.

In the case of *Taaffe* v. *Sanderson,* 173 Ark. 970, 294 S. W. 74, we considered the requirement, under § 4893, Pope's Digest, that each candidate file a pledge that he is familiar with the Corrupt Practice Act and that he will in good faith comply with it. In that case the candidate had filed a pledge within apt time stating that the candidate was familiar with the Corrupt Practice Act; but the pledge entirely omitted the part of the pledge (required by the statute) by which the candidate should have promised to abide by the provisions of this law. We held in that case that, while the pledge was defective, it was a substantial compliance with' the statute.

In the case of *Spence* v. *Whittaker,* 178 Ark. 51, 9 S. W. 2d 769, we had to decide whether Spence was entitled to have his name on the ballot in the face of the objection that he had by mistake filed his "corrupt practice pledge" with the secretary of the Democratic Central Committee instead of with the Secretary of State as required by § 3898, Crawford & Moses' Digest (§ 4893, Pope's Digest). In that case the contention of Spence that he was not ineligible by reason of this mistake was upheld.

The rationale of these cases is that where there has been a substantial compliance with the requirements of the law as to candidacy for office a citizen should not be deprived of the high privilege of offering for public office because of a failure to observe literally all requirements. If this principle is to be applied as to requirements of the statute, *a fortiori* it should control where the requirement is based merely on a party rule.

Was there then a substantial compliance by appellant with the party rule as to the loyalty pledge to be filed with the secretary of the committee? His pledge contained the proper language and it was filed with the proper official of the party, who received it and retained it, along with the fee, without making any objection that appellant's name was signed thereto by his mother. While there is some question in the testimony as to when the power of attorney was mailed, there is no doubt from the testimony that three days before the pledge was filed appellant had executed and acknowledged a power of attorney specifically authorizing his mother to execute and file the pledge in his behalf, and that after learning that she had done so appellant ratified her action. The County Central Committee did not take any action as to this pledge. The secretary apparently treated the pledge as valid, and the decision to refuse to put appellant's name on the ticket was that of the chairman alone. The committee did not pass on the matter. So we do not have here an interpretation of a party rule by the party committee such as was involved in *Williamson* v. *Montgomery, supra.*

In determining whether there was a substantial compliance with this rule we think all of the circumstances revealed by the proof should be taken into consideration. Here appellant was a member of the armed forces of the United States and his duties prevented him from being personally present in his home county, and apparently, at the time he executed the power of attorney and wrote his mother directing her as to his candidacy, his ship was about to sail for a foreign port.

From time immemorial soldiers and sailors absent from home in defense of their country have been the objects of special consideration at the hands of lawmakers and courts. During the great war just ended many statutes, the purpose of which was to protect the civil and property rights of men in the armed forces, were enacted by Congress and by our own legislature.

And courts have, in the absence of legislation, been alert to recognize the extraordinary circumstances of the soldier away from his homeland in time of war, and to extend to him, as far as is reasonably possible, the same rights and privileges enjoyed by those other citizens who, through the service and sacrifice of the soldier, are permitted to remain in safety at home. An example of this is the holding of the courts that many of the technical requirements as to execution of a will should be waived as to the will of a soldier. See *Cartwright* v. *Cartwright,* 158 Ark. 278, 250 S. W. 11; *Johnson* v. *White,* 39 F. 2d 793. "Throughout the history of the civilized world, since the decrees of Julius Caesar, the intention and wish of the soldier, with relation to designation of beneficiary or disposition of property, killed in the line of duty, has been carried out when ascertained, whether it was scrawled in the sand with the point of his sword, or written on the scabbard of his sword or his shield . . ." *Claffy* v. *Forbes, Director,* 280 Fed. 233.

The right to become a candidate for public office is, under our form of government, a fundamental right, which should not be in any manner curtailed without good cause; and any law or party rule, by which this inherent right of the citizen is diminished or impaired ought always to receive a liberal construction in favor of the citizen desiring to exercise the right.

While a pledge not signed by the candidate in person should not, under ordinary and normal conditions, be accepted by the party officials, we conclude, under the special circumstances shown in this case, that what appellant, situated as he was, as a member of the armed forces, and subject as he was at all times to the control,

as to his movements, of his superior officers, did as to qualifying for candidacy was a substantial compliance with the rules of the party. Therefore the denial of his right to have his name placed on the ballot as a candidate was arbitrary and he was entitled to the writ of mandamus prayed for by him.

The judgment of the lower court is accordingly reversed and the cause remanded with directions that the writ of mandamus issue; and immediate mandate in this case is ordered.

GRIFFIN SMITH, Chief Justice, and McHANEY, J., dissent.