POPULIST PARTY of ARKANSAS, Ralph Nader
and Peter Miguel Camejo, *et al.* *v.* Linda CHESTERFIELD
and Democratic Party of Arkansas

04-994 195 S.W.3d 354

Supreme Court of Arkansas
Opinion delivered October 1, 2004

*Mike Beebe*, Att'y Gen., by: *Wendy L. Kelley*, Deputy Att'y Gen., and *Hilburn, Calhoon, Harper, Pruniski & Calhoon, Ltd.*, by: *Sam Hilburn*, for appellants.

*Vickery & Carroll, P.A.*, by: *Robin J. Carroll*; and *Brian D. Greer*, for appellees.

Bᴇᴛᴛʏ C. Dɪᴄᴋᴇʏ, Chief Justice. This is an appeal from Pulaski County Circuit Judge Timothy D. Fox's decision granting a writ of mandamus. Linda Chesterfield and the Democratic

Party of Arkansas contested the certification of the Populist Party of Arkansas's Presidential and Vice Presidential candidates. Judge Fox granted the writ of mandamus, and the Populist Party, Presidential candidate Ralph Nader, and Vice Presidential candidate Peter Miguel Camejo bring five points for reversal: (1) whether the trial court had subject matter jurisdiction due to lack of standing; (2) whether the trial court had personal jurisdiction over Nader; (3) whether the trial court interpreted the requirements of Ark. Code Ann. § 7-8-302(5)(B) in a constitutional manner; (4) whether the trial court misinterpreted Ark. Code Ann. § 7-1-101(18); and, (5) whether the Secretary of State should be ordered to verify Nader and Camejo on the ballot even if the trial court's writ of mandamus is valid because the trial court did not remove Camejo from the ballot.

For the reasons explained below, we vacate Judge Fox's order granting the writ of mandamus and order the Populist Party of Arkansas's candidates, Ralph Nader and Peter Miguel Camejo, to be included on the 2004 presidential ballot.

*Procedural History*

On September 10, 2004, Linda Chesterfield and the Democratic Party of Arkansas filed a complaint and petition for writ of mandamus and declaratory judgment seeking the disqualification of Ralph Nader and Peter Camejo from the general election ballot as nominees for President and Vice President of the United States. Judge Fox heard the matter on September 17, 2004, first addressing Nader and Camejo's "motion to dismiss plaintiffs' complaint and petition for writ of mandamus and declaratory judgment by special appearance for lack of jurisdiction," filed September 17, 2004.

Judge Fox did not make a ruling on the motion to dismiss but took testimony and evidence. He summarized the arguments by stating:

> I believe these are the areas that are in play. That The Populist Party of Arkansas, at least at some point in time, somebody signed as The Better Life of Arkansas, that it's not qualified as a party or a new party because it didn't receive three percent or more of the vote in the last Presidential election for a candidate . . . And the next thing that happens is that you have to get at least 1,000 signatures that are in the proper form and from qualified folks to sign petitions. So those are two separate things. Then also the plaintiffs are arguing

that the defendants Nader and Camejo have accepted the nomination in other states from parties that are different than The Populist Party and that they are therefore ineligible as candidates for that party in Arkansas pursuant to Ark. Code Ann. § 7-7-204 . . . the petition forms themselves are invalid regardless of the number of signatures, because they do not identify The Populist Party sponsorship of the candidates and they don't contain a canvasser's verification.

On September 20, 2004, after the hearing, Judge Fox issued a memorandum opinion determining that jurisdiction was proper as to Nader but that it did not have jurisdiction as to Camejo. Judge Fox also found that the petitions did not comply with the requirement of Ark. Code Ann. § 7-8-302(5)(B). The trial court wrote:

The General Assembly has established many requirements for "political parties" with respect to their participation in the election process. "Political parties" have to receive at least three percent (3%) of the votes cast in the last general election for Governor or nominees for presidential electors. If "political parties" fail to receive three percent (3%) they lose their status. In order to become a new "political party" a "political group" has to obtain the signatures of qualified electors, whichever is less, at the last preceding election. And "political parties" are required to hold primary elections.

But the law is clear and unambiguous that the qualified electors signing the petitions of a "political group" must declare that the names to be printed on the ballot be "the names of their candidate". The petitions submitted by the defendant "political group" do not meet such threshold requirement. Accordingly, a writ of mandamus will issue to the defendant Daniels to recall the certified list and to remove the name of Ralph Nader from the certified list as a candidate for the defendant "political group."

Judge Fox ordered the immediate recall of the certification of full lists of all candidates to all county boards of election commissioners issued in accordance with Ark. Code Ann. § 7-5-203(a) and ordered the Secretary of State to issue a new list of candidates after removing the name of Nader as the candidate for the office of President.

Appellants filed a notice of appeal on Tuesday, September 21, 2004, and a brief oral argument on the issue of whether to stay the trial court's order was heard in this court on Thursday,

September 23, 2004. This court then issued an order directing the Secretary of State to advise the counties not to print any other ballots until this case was resolved. Upon review of the briefs filed and arguments made to this court we now vacate the trial court's issuance of the writ of mandamus. "In making our decision in this case we are guided by the overriding constitutional principles in favor of ballot access." *The Reform Party of Florida v. Black*, 2004 WL 2075415 (Fla.) (Sept. 17, 2004).

Before turning to the merits of Nader's argument regarding statutory interpretation, we note that the Populist Party, as a political group, is the party in interest in this case. Under Arkansas law, it is the political group that has a right to place names on the ballot for the office of President and Vice President of the United States. Thus, Nader was not a necessary and indispensable party here. Furthermore, Judge Fox found there is no statutory require-ment for the name of the "political group" to be on the petition. As to the issue of standing, it was waived by the Populist Party, as no objection was raised to the trial court below.

■ The Democratic Party of Arkansas and Chesterfield contend that the Populist Party did not have a valid political convention. However, on August 24, 2004, electors of the Popu-list Party met by conference call for their convention. Minutes were taken and a vote was taken on the delegates. Arkansas does not define what constitutes a convention and this court cannot say that the telephone conference convention is insufficient under Ark. Code Ann. § 7-8-302(5)(E).

## Writ of Mandamus

■■ This court has held that an action for mandamus is the proper method of enforcing the right set forth in Ark. Code Ann. § 7-5-207(b). *State v. Craighead County Bd. of Election Comm'rs*, 300 Ark. 405, 779 S.W.2d 169 (1989). Mandamus is traditionally regarded as a remedy to be used on all occasions where the law has established no specific remedy, and justice and good government require it. *Id.; Ex parte Trapnall*, 6 Ark. 9 (1845). It is a writ which is used to enforce an established right. *Id.; Gregg v. Hartwick*, 292 Ark. 528, 731 S.W.2d 766 (1987). The right the appellant seeks to enforce is contained in Ark. Code Ann. 7-5-207(b) (1987). *Id.* That statute created a right in the people to the proper administration of election laws by prohibiting the inclusion of ineligible candidates on the ballot. *Id.*

### Presidential Group Candidate Petition

The Populist Party argues that the trial court's interpretation of Ark. Code Ann. § 7-8-302(5)(B) was unconstitutional. We agree.

Judge Fox determined that the petition forms, used by the Populist Party, failed to comply with the technical requirements of Ark. Code Ann. § 7-8-302(5)(B), which states:

> (B) A political group desiring to have the names of its candidates for President and Vice President printed on the ballot shall file a petition with the Secretary of State by noon on the first Monday of August. The petition shall contain at the time of filing the names of one thousand (1,000) qualified electors of the state declaring their desire to have printed on the ballot the names of their candidate for President and Vice President. The Secretary of State shall verify the sufficiency of the petition within ten (10) days from the filing of the petition. If the petition is determined to be insufficient, the Secretary of State shall notify in writing the political group through its designated agent and shall set forth his or her reasons for so finding. When notice is delivered, the sponsors shall have an additional ten (10) days in which to do any or all of the following:
>
> > (i) Solicit and obtain additional signatures;
> >
> > (ii) Submit proof to show that the rejected signatures or some of them are good and should be counted; or
> >
> > (iii) Make the petition more definite and certain.

Ark. Code Ann. § 7-8-302(5)(B) (Supp. 2003). Judge Fox found that the petitions were insufficient because petitioners did not state on the petition that Nader and Camejo were "their" candidates. Rather, the petitions stated a desire to have "the" particular candidates on the ballot. Specifically, the petition stated:

> We, the undersigned, propose the name of Ralph Nader and Pete Miguel Camejo as President and Vice President to be placed on the ballot as Presidential group candidate in the General Election to he held on November 2, 2004, and each of us for himself or herself says: I have personally signed this petition; I am a legal voter of the State of Arkansas, and my printed name, date of birth, residence, city or town of residence, and date of signing are correctly written after my signature.

■ However, there is no statutory requirement that each person who signs the nominating petition be a member of the group circulating the petition. Ark. Code Ann. § 7-8-302(5)(B) only requires that those persons signing the petition express their desire to have the group's candidates on the ballot and that the petitioners be qualified electors who are registered voters under Ark. Code Ann. § 7-1-101(22).

■ Moreover, the Populist Party is not required to use either of the two forms contained in the "2004 Candidate Information" handbook published by the Secretary of State's Office because Ark. Code Ann. § 7-8-302(5)(B) does not prescribe a certain form. Under Ark. Code Ann. § 7-8-302(5)(B), the Secretary of State's Office is required to accept any form that contains at the time of filing "the names of one thousand (1,000) qualified electors . . . declaring their desire to have printed on the ballot the names of their candidates for President and Vice President." Ark. Code Ann. § 7-8-302(5)(B). The petition used here by the Populist Party, and its candidates, clearly met this requirement

■ Further, there is no specific requirement that the petitioners declare their intention to actually vote for the candidate on the petition. The United States Court of Appeals for the Sixth Circuit dealt with this issue in *Anderson v. Mills*, 664 F.2d 600 (6th Cir 1981). In that case, the court found a Kentucky petition-signature statute unconstitutional. The court wrote:

> Of course, the "desire to vote" provision is not precisely analogous to the factual situations previously discussed. However, this provision, as did the lack of partitions and the thin ballots, results in publicizing the way one intends to vote. Certainly, it can be claimed that the latter two were actual revelations for whom the subscriber voted, while the former is only a declaration of one's desire and intention to vote in a future election. However, we refuse to adopt such an artificial distinction because all such practices jeopardize the right to secrecy of the ballot. The declaration operates to discourage citizens from participation in the electoral process simply because they do not wish people to know how they will vote. Such a revelation invokes the fears sought to be quelled by the secrecy of voting laws in this country, and subjects an elector to the pressure of his neighbors, employers, and social peers. Since the declaration abridges the right to a secret ballot in such a direct and unacceptable manner, it cannot stand.

*Id.* at 608-609. We agree with the rationale of the Sixth Circuit that a law may not require an electorate to name "their" candidates for President and Vice-President. Further, a petitioning law may only require that the signers state their desire that the named candidate, or named party, appear on the ballot. *Id.* Otherwise, a party who is uncertain about whom he will support in the general election, but has an interest in the candidate, would be unable to sign the petition because of the requisite declaration. *Id.* Furthermore, "the possibility of having new candidates with unusual and creative political philosophies is greatly reduced. As a result this requirement fosters a system which favors the *status quo,* while discouraging independent candidates and new political parties." *Id.* at 609.

■ Our own court has recognized that the right to become a candidate for public office is, under our form of government, a fundamental right, which should not be in any manner curtailed without good cause. *Fisher v. Taylor,* 210 Ark. 380, 196 S.W.2d 217 (1946). Any law or party rule, by which this inherent right of the citizen is diminished or impaired ought always to receive a liberal construction in favor of the citizen desiring to exercise the right. *Id.*

■■ Statutes are not only presumed to be constitutional, but a court must construe a statute as constitutional if at all possible. *Bunch v. State,* 344 Ark. 730, 43 S.W.3d 132 (2001). As the Supreme Court has recognized, trial courts cannot impose a restriction that denies a group their right to associate or denies them access to the ballot unless narrowly tailored to meet a compelling state interest. *Lubin v. Panish,* 415 U.S. 709, 94 S.Ct. 1315 (1974).

■ Here, the manner in which the trial court's interpretation of Ark. Code Ann. § 7-8-302(5)(B) leads not only to an absurd result, but also renders the provision unconstitutional. This unconstitutional reading of the petitioning provision at issue infringes upon one of the fundamental civil liberties of our democracy, that of the secret ballot. *Anderson,* 664 F.2d 600. In sum, section Ark. Code Ann. § 7-8-302(5)(B) does not state that an electorate name "their" candidate for President or Vice President. The statute only requires that the signer of the petition state their desire that the named candidates appear on the ballot.

Having vacated the writ of mandamus, we need not address the other issues raised in this appeal, such as the trial court's

interpretation of Ark. Code Ann. § 7-1-101(18) or whether the Secretaty of State should be ordered to verify Nader and Camejo on the ballot.

 For the reasons stated above, the writ of mandamus is vacated. Our September 23, 2004, order to the Secretary of State advising the County Board of Election Commissioners to not initiate the further printing of ballots relating to the presidential election is hereby dissolved. The mandate shall issue immediately and the Secretary of State's Office is ordered to certify the ballot with the names of the Populist Party of Arkansas, Presidential Candidate Ralph Nader, and Vice Presidential candidate Peter Miguel Camejo.

BROWN, J., concurs.

GLAZE, IMBER, and HANNAH, JJ., dissent.

ROBERT L. BROWN, Justice, concurring. I join the majority opinion to vacate the writ of *mandamus*, and I write only to address the issues relating to the name of the political group and the convention requirement. *See* Ark. Code Ann. § 7-8-302 (Supp. 2003).

Section 7-8-302 does not require that the specific name of the political group be included on the petitions for nomination. Moreover, the style "Presidential Group Candidate Petition" was included on each petition circulated for signatures, which alerted the signers of the petition that they were signing on behalf of a political group. The following steps were taken by the Secretary of State and the Populist Party to comply with § 7-8-302:

- On August 11, 2004, the Secretary of State certified 1,234 signatures on the Nader petitions for.a political group known as The Better Life. This was the verification of sufficiency.

- On August 24, 2004, the Populist Party advised the Secretary of State that the correct name of the political group is The Populist Party of Arkansas and not The Better Life. Tim Humphries, legal counsel for the Secretary of State, testified at the hearing that there was no problem with changing the name. He also testified that issuing another verification of sufficiency to The Populist Party was not necessary because "it was the same group."

- On August 24, 2004, Jim Macri, party chairman of The Populist Party, wrote to the Secretary of State that "The Populist Party of

Arkansas with the slogan 'The Better Life' convened and unanimously nominated Ralph Nader . . . and Peter Miguel Camejo" as the nominees for president and vice-president. An amended letter dated August 24, 2004, and filed September 1, 2004, with the Secretary of State added the statement that the Nader petitions had been presented on August 2, 2004, with additional petitions submitted during the ten-day cure period.

• On August 24, 2004, the Populist Party, through its party chairman, Jim Macri, advised the Secretary of State of the names of its six presidential electors.

Jim Macri testified at the hearing that the convention for The Populist Party was held by conference call on August 24, 2004. He did not recall the timing of when the electors were chosen.

Mr. Macri also testified that he selected the delegates for the convention, which was by conference call, and about ten people, though probably four to six people participated. He had a written agenda for the conference call-convention and kept minutes. He used Roberts Rules of Order on how to proceed with the conference call.

The General Assembly does not define in § 7-8-302 how a group's convention is to be held or what comprises a convention. There is no requirement that it be by an assembly of people as opposed to a conference call. As chairman of The Populist Party, Mr. Macri complied with § 7-8-302(5)(E) by writing the Secretary of State and certifying the group's selection for president and vice-president.

The clear intention of § 7-8-302(5)(B) is to allow political groups access to the ballot for president and vice president, if they file a petition on behalf of their candidates with the signatures of one thousand qualified electors. The Populist Party complied with the requirement with signatures of more than one thousand electors. By doing so, it has shown a modicum of support for the group's candidates, which is what our statute requires.

TOM GLAZE, Justice, dissenting. Most likely, due to the few days this court has had to study and deliberate on the issues raised in this election case, the majority court's decision is confusing and reflects a fundamental lack of understanding of Arkansas' election process. I must dissent.

First, I wish to address those pertinent Arkansas election laws and procedures that must be followed to permit a person's name to be printed on the ballot as a candidate for president or vice president. These statutory procedures *must* (*shall*) be conducted.[1] In each year in which a president and vice president are chosen, each political party or group in the state *shall* choose, by its state convention, electors of president and vice president.[2] Any political party or group which has qualified under § 7-8-302 *shall* by state convention certify its total list of electors to the secretary of state and the certificate *shall* be filed no later than September 15 in the year of the election.

Now, it is necessary to understand how the names of a political party's candidates for president and vice president qualify to have their names printed on the general election ballot. If we are speaking of an established political party candidate, the party *shall* nominate by primary election. A political party under Arkansas law is defined as any group of voters which, at the last preceding general election, polled for its candidate for governor in the state or its nominees for presidential electors with at least three percent (3%) of the entire vote cast for the office. In our case, the Democratic and Republican Parties are political parties that are required to nominate by primary election. On the other hand, a new political party formed under our law may nominate by convention if the presidential election is the first general election after the party was certified. Applied in this case, the Populist Party sought to nominate by convention, assuming the political group complied with Arkansas law, especially the petition requirements set out in § 7-8-302(5)(B). That statutory provision dictates that a political group *shall* file with the secretary of state a petition containing the signatures of one thousand (1,000) qualified electors. In the petition, the electors must declare their desire to have printed on the ballot, the names of their candidates for president and vice president.

If the group's petition was found insufficient, the secretary of state must notify the group's designated agent of the deficiencies. Here, that person was Jim Macri. When the notice is delivered, the sponsors (group) have ten (10) days to correct the insufficiency, but any amendments or corrections *shall not* materi-

---

[1] *See* Ark. Code Ann. §§ 7-8-301—307 (Repl. 2000 and Supp. 2003).

[2] *See* Ark. Code Ann. § 7-8-302(1)(A) (2003).

ally change and effect the petition, and no changes shall be made in the group's petition except to correct apparent typographical errors or omissions. Once the new political group qualifies by petition to place its candidate on the ballot, the group shall submit a certificate of choice, stating the names of its candidates for president and vice president, signed under oath by the chair, vice chair, or secretary of the new political party's convention.

The Populist Party repeatedly failed to comply with the laws required to establish its party in Arkansas. To begin with, the group seeking to form its party by petition never informed the person signing the petition of the name of the proposed new party sponsoring the group's petition. The group claims such identifying language is unnecessary because its candidates, Ralph Nader and Peter Camejo, were identified as candidates for president and vice president on some of the petitions. However, this procedure and language used by the Populist Party/Better Life Group are improper because this language is used by persons wishing to qualify as an *independent* candidates. The practice used by the Populist Party only confused matters further, because Arkansas does not authorize or permit persons to run for president and vice president as an independent candidate. In Arkansas, one can only run for president if one is selected and certified by a political party's state convention. Thus, because Arkansas law only provides for *party* candidates to have their names printed on the general election ballot, it is vital for the signers of the petition to be informed of the name of the party attempting to qualify so that it can later select its candidate for president and vice president by convention.

Also adding to the confusion in this case, the persons (or group) that first commenced circulating petitions called themselves the Better Life Party; after failing to gather the requisite number of signatures, the group changed its name to the Populist Party of Arkansas. Obviously, the persons who signed the group's initial petitions did not know what party was being formed because no party name appeared on the petitions. This leads one to ask the question, if a person and legal voter signing a petition is asked to sign a petition to establish a new party, shouldn't she or he be apprised of the name of that party? Too, Arkansas law on this subject is designed such that the names of the persons whom the party may select at its convention need not be identified. For example, in 1972, the American Party in Arkansas was previously known as George Wallace's Party. However, when Mr. Wallace could not run for president, the American Party leaders tried to

qualify as a party in Arkansas so it could subsequently select John G. Schmitz as the party's new presidential candidate. The American Party failed to qualify as a party, so Schmitz was never selected. *See American Party of Arkansas v. Brandon*, 253 Ark. 123, 484 S.W.2d 881 (1972). Nonetheless, under Arkansas law, any political group that does qualify may wait to select its presidential candidates when its state convention meets. If a party has no candidate at the time petitions are circulated, or for some reason loses its intended candidates, the new party can still select other candidates to represent it, since it is the political party that selects its presidential candidates.

In the present case, the political group's failure to identify it by name could only lead to confusion and litigation. As noted above, the original petitions were circulated by persons who referred to themselves as the Better Life Group. That group later labeled itself the Populist Party. While this newly named group was referred to as one touting Nader for president, Nader is also a presidential candidate representing the Reform Party in some states. In his presidential bid in 2000, he ran as the Green Party candidate. Nader is now identifying himself as representing the Populist Party, but, again, that party's name did not appear on the petition that the people (legal voters) signed. It is difficult to know which party Mr. Nader represents. Surely some of this confusion could have been eliminated if the petitions circulated had consistently settled on one party and revealed the group's true name *before and during* the time the petitions were circulated. In short, it defies common sense to conclude that a political group's petitions are valid when they neither identify the group, nor indicate to the signers to the petition the name of the group seeking to gain access to the ballot. As stated by the appellants, if this court condones the Populist/Better Life Group's failure to follow Arkansas law and validates that group's circulation of petitions without identifying the political group's name, a political group could obtain the required number of signatures and later disclose the group's name is the Neo-Nazi Party, and its party's name would be listed as such on the ballot. Surely, the persons signing the petition should have the right to know what group they are proposing to be on the ballot. In addition, if this court approves a petition containing only individual candidates' names with no mention of party or group affiliation and finds that permissible, why did the general assembly provide that "*only* political parties or groups" can have access to the presidential ballot?

The Populist Party also violated other requirements needed to place their presidential candidates names on the ballot. As alluded to above, Arkansas law *required* the Populist Party to hold a convention to select, nominate, and certify Nader and Camejo as its candidates. Mr. Macri, the Populist Party's designated agent and party chairman, conceded that he and Mr. Smith actually selected the list of electors, and that Macri said he held a convention via telephone conference call, which included four, five, or six people (electors). Although Mr. Macri could not recall if these electors were actually picked prior to the convention, his description of what happened before his conference call clearly reflects that the electors had been selected by him and Mr. Smith in preparation for the convention. The appellants take umbrage at calling Macri's conference call a nominating convention, and argue that a political convention is "an assembly of delegates chosen by a political party to nominate candidates for an approaching election." Appellants submit that Macri and Smith fell short of such an assembly. Appellants further argue that, if such a sparsely attended phone conference call can be considered a convention, where would the line be drawn?

In conclusion, it is apparent to me from all the evidence that the Populist Party had little staff and workers to perform the legal steps needed to establish a political party in Arkansas. Because of this, the support he did have simply was unable to perform those requirements the law provides to qualify political parties or groups. As a result, confusion prevailed. It is my firm belief that, while the trial court in this case decided Nader's and Camejo's names should not appear on the General Election ballots based on other grounds, I would affirm his order for the reasons set out above.

IMBER and HANNAH, JJ., join this dissent.

ANNABELLE CLINTON IMBER, Justice, dissenting. The central question in this case is the interpretation of one line in Ark. Code Ann. § 7-8-302(5)(B):

> A *political group* desiring to have the names of its candidates for the President and Vice President printed on the ballot shall file a petition with the Secretary of State by noon on the first Monday of August. The petition shall contain at the time of filing the names of one thousand (1,000) qualified electors of the state *declaring their desire to have printed on the ballot the names of their candidate for President and Vice President.*

(Emphasis added.) When interpreting a statute for the first time, we look to the plain language of the statute. *Barclay v. First Paris Holding Co.*, 344 Ark. 711, 718, 42 S.W.3d 496, 500 (2001). Here, the pivotal question is — in the phrase, "their candidate," to whom does the word "their" refer? The trial court interpreted the plain language to mean the signers had to personally endorse Nadar and Camejo as "their" candidates. In doing so, it must have considered the plurality of the pronoun "their" in applying it to the obviously-plural noun, "electors." This interpretation requires an unconstitutional declaration of how one intends to vote. *Anderson v. Mills*, 664 F.2d 600 (6th Cir. 1981). As we must construe a statute to be constitutional, if possible, the trial court's interpretation was incorrect. *Weiss v. McFadden*, 353 Ark. 868, 120 S.W.3d 545 (2003).

Under a plain-language interpretation, however, there is another option. The phrase "their candidate" could refer to the *political group's* candidate. While the "political group" can be a singular noun with the appropriate possessive pronoun "its", the term "political group" is a collective noun and, thus, can also be plural, with the possessive pronoun "their." For example, the jury rendered *its* verdict; but the jury took *their* seats. In this statute, the legislature refers to the candidates of the political group as both "its candidates" and "their candidates," recognizing the collective nature of the noun. *See* Ark. Code. Ann. §§ 7-8-302(1)(A), (5)(E) (2004). Applying this construction to the statute, it reads "the petition shall contain at the time of filing the names of one thousand (1,000) qualified electors of the state declaring the [*qualified electors'*] desire to have printed on the ballot the names of [*the political group's*] candidate." Because this interpretation merely requires that the electors show their support for the *political group's* access to the ballot and not support for the individual candidates, it is a constitutional interpretation.

As the legislature did not intend to allow access to the presidential ballot for individuals, such a construction also gives effect to the intent of the legislature. When a statute is ambiguous, we must interpret it according to the legislative intent. *Barclay v. First Paris Holding Co.*, 344 Ark. at 718, 42 S.W.3d at 500. Moreover, interpreting the statute as requiring individuals to indicate their support of a *political group's* access to the ballot (rather than supporting the access of an individual) advances the overall legislative scheme by requiring a higher level of support for the presidential petitions. While it may be relatively easy to find 1,000 people who are willing to support the ballot placement of one

candidate, it is much more difficult to find 1,000 people who are willing to give that support to a political group. Thus, when looking at section 7-8-302 in connection with section 7-7-103 (dealing with the placement of independent candidates on the ballot), it follows that section 7-7-103 requires significantly more signatures.

Two statutes should always be construed so as to give effect to both, if possible. *Garrett v. Andrews*, 294 Ark. 160, 741 S.W.2d 257 (1987). Our review becomes an examination of the whole act. We reconcile provisions to make them consistent, harmonious and sensible in an effort to give effect to every part. *Barclay v. First Paris Holding Co.*, 344 Ark. at 718, 42 S.W.3d at 500. Requiring that a presidential ballot petition under section 7-8-302 only state the desire of the signers that the named candidates appear on the ballot renders void the legislature's obvious use of very different language in the drafting of these two statutes. We construe the statute so that no word is left void, superfluous, or insignificant; and meaning and effect are given to every word in the statute if possible. *Id.* While constitutional, the majority's interpretation unnecessarily violates this fundamental tenet of statutory construction.

In light of the above arguments, the correct interpretation of section 7-8-302 is that a petition for a political group's access to the ballot must be signed by 1,000 electors who state their desire to have the political group's candidates placed on the ballot.[1] Accordingly, as the petition in question did not request ballot access for any particular group but merely two individuals, it is invalid under the statute. Because the trial court reached the right result for the wrong reason, I would affirm. *Middleton v. Lockhart*, 355 Ark. 434, 139 S.W.3d 500 (2003).

For the above reasons, I respectfully dissent.

GLAZE and HANNAH, JJ., join this dissent.

---

[1] This interpretation is consistent with the standard Presidential Group Candidate Petition form drafted by the Secretary of State's election expert, Mr. Tim Humphries, which specifically requires the name of the political group to be placed on the petition.